United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE ZIVANIC, | ) Case No. 10-737 SC |
|     Plaintiff, | ) |
|   v. | ) ORDER DENYING MOTION TO |
| | ) REMAND |
| WASHINGTON MUTUAL BANK, F.A.; ERIC DIPPEL; LISA DIPPEL; JPMORGAN CHASE BANK, N.A.; DEUTSCHE BANK NATIONAL TRUST COMPANY; QUALITY LOAN SERVICE CORPORATION; and DOES 1-50, inclusive, | ) ) ) ) ) ) |
|     Defendants. | ) ) |

## I. INTRODUCTION

Now before the Court is a Motion to Remand and Request for Attorney's Fees and Costs ("Motion to Remand") filed by Plaintiff Yvonne Zivanic ("Plaintiff" or "Zivanic"). Docket No. 8.[1] Defendants JPMorgan Chase Bank, N.A. ("JPMorgan"), and Deutsche Bank ("Deutsche") filed an Opposition. Docket No. 14. Plaintiff did not file a Reply. For the reasons described below, the Court DENIES Plaintiff's Motion to Remand and DENIES Plaintiff's request

---

[1] Zivanic submitted the Motion to Remand twice. Docket Nos. 8, 9. Because the second docket entry appears to contain only a new cover page (appending the word "AMENDED" to the title of the motion, and listing a different hearing date), and a handful of seemingly random pages from the earlier docket entry, the Court will refer only to the first docket entry (Docket No. 8) in this Order.

for attorney's fees.

## II. BACKGROUND

By this action, Zivanic challenges alleged misconduct that took place during the origination of a housing loan that she used to purchase her current home, during her subsequent efforts to modify that loan, and during the procedures that lead to the recent foreclosure of her home. See Docket No. 1 ("Notice of Removal") Ex. 1 ("Compl.").

Zivanic claims that in late 2004, she and her husband began working with Defendants Eric Dippel and Lisa Dippel, who were allegedly employed as brokers/salespersons by Defendant Washington Mutual Bank, F.A. ("WaMu"). Id. ¶¶ 4-5, 16-17. The Dippels were assisting Zivanic in securing finance for the purchase of her current house, which is located in Santa Clara County, California. Id. ¶¶ 1, 3. Zivanic and her husband received a loan for $885,000 pursuant to a Deed of Trust. Id. ¶¶ 19-20. According to the Complaint, the Dippels "led Plaintiff and her husband to believe that she would be approved for a loan with certain terms. However, the NOTE contained a higher interest rate than what had been originally represented to Plaintiff, wrapped unearned fees into Plaintiff's monthly mortgage payment, and contained other less favorable terms." Id. ¶ 22. Zivanic also complains that she and her husband should have never been approved for the loan, because they would be unable to afford the fully amortized payment rates. Id. ¶ 23. The Deed of Trust originally named WaMu as the lender and beneficiary, and California Reconveyance Company was named as the trustee. Id. Ex. A ("DoT") at 1.

1    In early 2008, Zivanic and her husband began experiencing
difficulties making their monthly loan payments, and "they began to
talk to WAMU representatives regarding forbearance." Compl. ¶ 29.
However, Defendants began taking measures to foreclose upon
Plaintiff's residence. By an "Assignment of Deed of Trust" dated
July 1, 2008 (and recorded on August 15, 2008), WaMu assigned the
Deed of Trust to "DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE
FOR WAMU 05-AR6 G2." Id. Ex. E ("DoT Assignment") at 1. By a
"Substitution of Trustee" dated July 1, 2008 (and recorded on
August 27, 2008), Deutsche then designated Defendant Quality Loan
Services Corporation ("Quality") as the trustee. Compl. Ex. F
("Substitution of Trustee") at 5-6. On the following day, July 2,
2008, Quality filed a Notice of Default and Election to Sell Under
Deed of Trust ("Notice of Default") with the recorder for the
County of Santa Clara. Compl. ¶ 30, Ex. D.

  Plaintiff claims that Defendant JPMorgan assumed the WaMu's
assets and liability when WaMu went bankrupt in September of 2008.
Compl. ¶ 33. In October of 2008, Zivanic and her husband
contracted with Amerivest "to assist in negotiating a forbearance
plan with WAMU," and on November 19, 2008, she was informed by
Gwendolyn Smith "of WMU's Loss Mitigation Department" that they had
been approved for a "Special Forbearance Agreement" ("SFA"). Id.
¶ 37, Ex. H. Zivanic and her husband signed the SFA, which
required a program entrance fee as well as three debt reduction
payments scheduled to take place in late 2008 and early 2009.
Compl. ¶¶ 37-38. Zivanic made these payments. Id. ¶ 39.

  Zivanic and her husband received a letter from WaMu on
December 18, 2008, which informed them that their payments would be

3

set at $3938.64 per month, starting in February of 2009. Id. ¶ 41. However, "[w]hen Mr. Zivanic attempted to make the first payment, he was advised that the letter was sent in error," and after calling his contact at WaMu, he "was told not to pay anything because they had not determined the final loan modification payment." Id. ¶¶ 41-42. Zivanic and her husband continued to work with WaMu to modify their loan, and continued to provide information as requested. Id. ¶¶ 43-44. Nevertheless, on August 6, 2009, Quality sold Zivanic's residence to Deutsche at public auction. Id. ¶ 45, Ex. J. Deutsche then filed an unlawful detainer action against Zivanic and her husband on September 21, 2009. Compl. ¶ 48. Zivanic apparently still possesses the property, and filed this action in an attempt to retain possession. See id. ¶ 51.

### III. LEGAL STANDARD

"Federal Courts are courts of limited jurisdiction," and a cause of action is presumed to lie outside of this limited jurisdiction until the party asserting jurisdiction establishes the contrary. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). An action that might have originally been brought in federal court is removable to federal court. 28 U.S.C. § 1441(a). A plaintiff may bring a motion to remand to challenge whether the removal procedures were proper. Id. § 1447(c). "The removal statute is strictly construed, and the court must reject federal jurisdiction if there is any doubt as to whether removal was proper. The defendants bear the burden of proving the propriety of removal." Simpson v. Union Pac. R.R. Co., 282 F. Supp. 2d 1151,

4

1153 (N.D. Cal. 2003) (citation omitted).

## IV. DISCUSSION

None of the Complaint's thirteen causes of action are explicitly framed as federal claims. However, in their Notice of Removal, Defendants refer to the fact that the Complaint makes references to Defendants' alleged violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq., the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and the Equal Credit Opportunity Act ("ECOA"), id. §§ 1691 et seq. See Notice of Removal ¶ 4.

Plaintiff claims that she does not list these statutes as grounds for independent causes of action; rather, she argues that they are only included to support her contention that Defendants have violated California's Unfair Competition Law ("UCL"), codified in section 17200 et seq. of the California Business & Professions Code. The UCL forbids "unfair competition" which "include[s] any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof Code §§ 17200, 17203.

Plaintiff argues that she is the "master of her complaint" and "has patently declined to state causes of action based on those [TILA, RESPA, and ECOA] violations. Instead, Plaintiff simply mentions those violations in passing." Mot. to Remand at 6. This argument ignores the explicit language of the Complaint itself. Immediately after Plaintiff sets out the basis for her UCL claim, including alleged violations of TILA, RESPA, and ECOA, the Complaint states a demand "for actual, compensatory, statutory, consequential, and punitive damages (in an amount to be proven at

trial) in favor of Plaintiff."  Compl. ¶¶ 94-97.  However, "[a] UCL action is equitable in nature; damages cannot be recovered."  <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 312 (2009).  As Defendants point out, Plaintiff's broad request for damages goes well beyond the scope of remedies authorized by the UCL.  Opp'n at 6.

While it is true that "there is no 'basic' or 'pivotal' federal question that impinges on [plaintiff's] right to relief" under the UCL, <u>Lippitt v. Raymond James Fin. Servs., Inc.</u>, 340 F.3d 1033, 1046 (9th Cir. 2003), Plaintiff is not simply bringing a UCL claim that is partially predicated on federal law.  Instead, she is seeking remedies that are clearly beyond those authorized by the UCL, and the Complaint is explicitly demanding relief based on several federal statutes.  Although Plaintiff's federal claims are not clearly labeled, she is unambiguously requesting remedies that are only available to her under federal law, and she has thereby conferred jurisdiction upon this Court.  See <u>Medina v. Ramsey Steel Co.</u>, 238 F.3d 674, 680 (5th Cir. 2001) (affirming denial of motion to remand where plaintiff sought remedies authorized by federal law but not available under state law).  Although Plaintiff had an opportunity to disclaim any intent to recover under federal law, she failed to take advantage of that opportunity by failing to file a Reply brief.

///
///
///
///
///
///

6

**V. CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Remand is DENIED.  Plaintiff's request for attorney's fees is DENIED.

IT IS SO ORDERED.

Dated: May 7, 2010 

UNITED STATES DISTRICT JUDGE