IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE ZIVANIC,<br><br>              Plaintiff,<br><br>     v.<br><br>WASHINGTON MUTUAL BANK, F.A.; ERIC DIPPEL; LISA DIPPEL; JPMORGAN CHASE BANK, N.A.; DEUTSCHE BANK NATIONAL TRUST COMPANY; QUALITY LOAN SERVICE CORPORATION; and DOES 1-50, inclusive,<br><br>              Defendants. | Case No. 10-737 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

**I.   INTRODUCTION**

     Now before the Court is a Motion to Dismiss filed jointly by Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and Deutsche Bank ("Deutsche").[1]  Docket No. 4 ("MTD").  The Motion to Dismiss is fully briefed.  Docket Nos. 12 ("Opp'n"), 13 ("Reply").  For the reasons described below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.

**II.   BACKGROUND**

     By this action, Plaintiff Yvonne Zivanic ("Zivanic") challenges alleged misconduct that took place during the

_____

[1] No other Defendant participated in this Motion.

**United States District Court**
For the Northern District of California

1   origination of a housing loan, during her subsequent efforts to

2   modify that loan, and during the procedures that led to the recent

3   foreclosure of her home.  <u>See</u> Docket No. 1 ("Notice of Removal")

4   Ex. 1 ("Compl.").

5          Zivanic claims that in late 2004, she and her husband began

6   working with Defendants Eric Dippel and Lisa Dippel, who were

7   allegedly employed as brokers/salespersons by Defendant Washington

8   Mutual Bank, F.A. ("WaMu").  <u>Id.</u> ¶¶ 4-5, 16-17.  The Dippels were

9   assisting Zivanic in securing finance for the purchase of her

10  house, which is located in Santa Clara County, California.  <u>Id.</u>

11  ¶¶ 1, 3.  Zivanic and her husband received a loan for $885,000

12  pursuant to a Deed of Trust.  <u>Id.</u> ¶¶ 19-20.  According to the

13  Complaint, the Dippels "led Plaintiff and her husband to believe

14  that she would be approved for a loan with certain terms.  However,

15  the NOTE contained a higher interest rate than what had been

16  originally represented to Plaintiff, wrapped unearned fees into

17  Plaintiff's monthly mortgage payment, and contained other less

18  favorable terms."  <u>Id.</u> ¶ 22.  Zivanic complains that she and her

19  husband should not have been approved for the loan because they

20  would be unable to afford the fully amortized payment rates.  <u>Id.</u>

21  ¶ 23.  The Deed of Trust named WaMu as the lender and beneficiary,

22  and California Reconveyance Company was named as the trustee.  <u>Id.</u>

23  Ex. A ("DoT") at 1.

24         In early 2008, Zivanic and her husband began experiencing

25  difficulties making their monthly loan payments, and "they began to

26  talk to WAMU representatives regarding forbearance."  <u>Id.</u> ¶ 29.

27  Defendants began taking measures to foreclose upon Plaintiff's

28  residence.  By an "Assignment of Deed of Trust" dated July 1, 2008

United States District Court
For the Northern District of California

1   (and recorded on August 15, 2008), WaMu assigned the Deed of Trust
2   to "DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR WAMU 05-AR6
3   G2." Id. Ex. E ("DoT Assignment") at 1.  By a "Substitution of
4   Trustee" dated July 1, 2008 (and recorded on August 27, 2008),
5   Deutsche then designated Defendant Quality Loan Services
6   Corporation ("Quality") as the trustee.  Id. Ex. F ("Substitution
7   of Trustee") at 5-6.  On the following day, July 2, 2008, Quality
8   filed a Notice of Default and Election to Sell Under Deed of Trust
9   ("Notice of Default") with the recorder for the County of Santa
10  Clara.  Id. ¶ 30, Ex. D.

11      Plaintiff claims that Defendant JPMorgan assumed WaMu's assets
12  and liability when WaMu went bankrupt in September of 2008.  Id.
13  ¶ 33.  In October of 2008, Zivanic and her husband contracted with
14  Amerivest "to assist in negotiating a forbearance plan with WAMU,"
15  and on November 19, 2008, she was informed by Gwendolyn Smith "of
16  WAMU's Loss Mitigation Department" that they had been approved for
17  a "Special Forbearance Agreement" ("SFA").  Id. ¶ 37, Ex. H.
18  Zivanic and her husband signed the SFA, which required a program
19  entrance fee as well as three debt-reduction payments scheduled to
20  take place in late 2008 and early 2009.  Id. ¶¶ 37-38.  Zivanic
21  made these payments.  Id. ¶ 39.

22      Zivanic and her husband received a letter from WaMu on
23  December 18, 2008, which informed them that their payments would be
24  set at $3938.64 per month starting in February of 2009.  Id. ¶ 41.
25  However, "[w]hen Mr. Zivanic attempted to make the first payment,
26  he was advised that the letter was sent in error," and after
27  calling his contact at WaMu, he "was told not to pay anything
28  because they had not determined the final loan modification

3

payment." Id. ¶¶ 41-42.  Zivanic and her husband continued to work with WaMu to modify their loan, and continued to provide information as requested.  Id. ¶¶ 43-44.  Nevertheless, on August 6, 2009, Quality sold Zivanic's residence to Deutsche at public auction.  Id. ¶ 45, Ex. J.  Deutsche then filed an unlawful detainer action against Zivanic and her husband on September 21, 2009.  Id. ¶ 48.  Zivanic apparently still possesses the property, and filed this action in an attempt to retain possession.  See id. ¶ 51.

Zivanic's Complaint was removed to federal court on February 19, 2010.  On May 7, 2010, the Court denied Plaintiff's motion to remand this case back to state court.  Docket No. 17.  Now the Court addresses Defendants' Motion to Dismiss.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Although well-pleaded factual allegations are taken as true, a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

547 (2007).  The court need not accept as true legal conclusions couched as factual allegations.  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at 1949.

**IV.   DISCUSSION**

    **A.   <u>JPMorgan's Limited Assumption of Liability</u>**

JPMorgan contends that it is not subject to "any alleged liability for WAMU's purported acts related to the Subject Loan prior to JPMorgan's entering into the Agreement with the FDIC on September 25, 2008."  MTD at 4.  Plaintiff alleges that WaMu was the original lender and beneficiary under the Deed of Trust, and that JPMorgan later succeeded Washington Mutual in its role.  Compl. ¶¶ 3, 20-21, 33.  However, JPMorgan did not acquire these loans in full, directly from WaMu.  According to JPMorgan, the Office of Thrift Supervision appointed the Federal Deposit Insurance Corporation ("FDIC") as the receiver for WaMu, and the FDIC thereby "took over the assets of" WaMu and assumed the power to transfer its assets and liabilities.  12 U.S.C. §§ 1821(d)(2)(A)(i), 1821 (d)(2)(B)(i), 1821(d)(2)(G)(i).  The FDIC then entered into a Purchase and Assumption Agreement ("PAA") with JPMorgan, wherein JPMorgan assumed assets, but not associated liabilities, that had belonged to WaMu.  Request for Judicial Notice ("RJN") Ex. 1 ("PAA").[2]

---

[2] Plaintiff submitted a Request for Judicial Notice in support of her Motion to Dismiss.  Docket No. 5.  The PAA is a public document and this Court may consider it without converting the Motion to

Part of the PAA states:

> [A]ny liability associated with borrower claims
> for payment of or liability to any borrower for
> monetary relief, or that provide for any form of
> relief to any borrower . . . related in any way
> to . . . any loan made by a third party in
> connection with a loan which is or was held by
> the Failed Bank, or otherwise arising in
> connection with the Failed Bank's lending or loan
> purchase activities are specifically not assumed
> by the Assuming Bank.

Id. § 2.5.  Other courts that have interpreted this provision have concluded that "JPMorgan Chase expressly disclaimed assumption of liability arising from borrower claims," thereby leaving "the FDIC as the responsible party with respect to those claims."  Hilton v. Wash. Mut. Bank, No. 09-1191, 2009 U.S. Dist. LEXIS 100441, *6-9 (N.D. Cal. Oct. 28, 2009) (quoting Cassese v. Wash. Mut. Bank, 05-2724, slip op. at 6 (E.D.N.Y. Dec. 22, 2008)); see also Payne v. Security Sav. & Loan Ass'n, 924 F.2d 109, 111 (7th Cir. 1991) ("Absent an express transfer of liability by the [Receiver] and an express assumption of liability by Security Federal, FIRREA directs that [the Receiver] is the proper successor to the liability at issue here."); Gunter v. Hutcheson, 674 F.2d 862, 865 (11th Cir. 1987) (discussing purchase and assumption process and explaining rationale for limitations on liability).  Based on the above, the Court concludes that JPMorgan is not a proper defendant to those aspects of Plaintiff's Complaint that can be characterized as "borrower claims."

The PAA explicitly does not relieve JPMorgan from any liability that it has incurred in its role as a loan servicer.  PAA

_____

Dismiss into a motion for summary judgment.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

**United States District Court**
For the Northern District of California

1   § 2.1; <u>see</u> <u>also</u> <u>Punzalan v. Fed. Deposit Ins.Co.</u>, No. 09-0087, 2009

2   U.S. Dist. LEXIS 57829, *3 (W.D. Tex. July 9, 2009) ("Chase Bank

3   purchased Washington Mutual on the condition that FDIC remain

4   responsible for any Borrower Claims . . . in connection with

5   Washington Mutual's lending or loan purchase activities.  In

6   exchange . . . Chase Bank promised to assume responsibility for all

7   other liabilities, specifically including all mortgage servicing

8   rights and obligations of Washington Mutual." (citations and

9   internal quotation marks omitted)).  JPMorgan therefore may still

10  be held liable for misbehavior or fraudulent representations made

11  in the course of its provision of loan services to Plaintiff.  In

12  addition, JPMorgan explicitly qualifies its immunity by asserting

13  it only as to acts that occurred prior to September 25, 2008, when

14  JPMorgan assumed its interest in Plaintiff's loan.  <u>See</u> MTD at 4.

15  The Court will address each of the causes of action that

16  Defendants' challenge with these limitations in mind.

17      B.   **Plaintiff's First and Second Causes of Action for Fraud**

18          **and Misrepresentation**

19      Plaintiff's claims for fraud and misrepresentation against

20  JPMorgan are based solely on WaMu's involvement in the initial loan

21  origination process.  <u>See</u> Compl. ¶¶ 52-68.  As explained in the

22  previous section, JPMorgan is not liable for this conduct.

23  Therefore, the Court dismisses Plaintiff's first and second causes

24  of action as to JPMorgan to the extent that they are based on

25  WaMu's loan origination activities.

26      In Plaintiff's Opposition, Plaintiff contends that Deutsche

27  assumed WaMu's liabilities.  Opp'n at 5.  However, the Complaint

28  does not assert these causes of action against Deutsche.  Compl.

¶¶ 52-68.  Plaintiff also argues that it is asserting these causes of action against JPMorgan for activities related to their loan modification efforts.  Opp'n at 5.  There is nothing in the first or second causes of action to indicate that Plaintiff is attempting to raise loan-modification issues through these claims.  The Opposition therefore describes broader claims than those indicated by the Complaint.  The Complaint fails to put either JPMorgan or Deutsche on notice of how her claims for fraud and misrepresentation relate to conduct that occurred during the loan-modification process.  Plaintiff will be granted leave to amend to address these deficiencies.

C.    **<u>Plaintiff's Fifth Cause of Action for Breach of Covenant of Good Faith and Fair Dealing</u>**

This cause of action focuses on the conduct of the various Defendants that took place while Plaintiff and her husband were attempting to work with WaMu and/or JPMorgan to modify their loan, including the actions by Deutsche and Quality to proceed with the foreclosure of their residence.  Compl. ¶¶ 81-86.  Although Plaintiff asserts this claim against JPMorgan and Deutsche (as well as WaMu and Quality), Defendants only seek to dismiss this cause of action as to Deutsche.[3]

A claim for breach of the covenant of good faith and fair dealing must be based on a contract between the plaintiff and the defendant.  <u>Smith v. San Francisco</u>, 225 Cal. App. 3d 38, 49 (Ct.

---

[3] Defendants did not raise arguments in defense of JPMorgan until their Reply.  MTD Reply at 9.  Defendants' Reply may not include arguments that were not already raised in their Motion to Dismiss, except to respond to Plaintiff's Opposition, so the Court will not consider the arguments in defense of JPMorgan.

1    App. 1990).  Deutsche's only argument against this cause of action

2    is that Plaintiff must be basing it on the loan modification

3    agreement between Plaintiff and either JPMorgan or WaMu, and

4    Deutsche claims to have had no involvement in this agreement.  MTD

5    at 11.

6        However, the Complaint can be fairly read to indicate that the

7    Deed of Trust was the underlying contract that allegedly gave rise

8    to the covenant of good faith and fair dealing.  Compl. ¶ 84.

9    Deutsche was the assignee of WaMu as to the Deed of Trust.  <u>See</u> DoT

10    Assignment at 1.  It may or may not have been a breach of the

11    covenant of good faith and fair dealing to proceed with foreclosure

12    while Plaintiff was negotiating loan modification with the apparent

13    loan servicer, and while Plaintiff was following instructions to

14    withhold payments until modification was complete.  The Court is

15    not willing to determine, in the absence of competent briefing,

16    whether the Deed of Trust establishes a contractual relationship

17    sufficient to give rise to an obligation of good faith and fair

18    dealing.  However, this possibility requires the Court to deny

19    Defendants' request to dismiss Plaintiff's fifth cause of action.

20      **D.**    **Plaintiff's Sixth Cause of Action for Violation of**

21          **California Civil Code Section 2923.5(a)(2)**

22        California Civil Code section 2923.5(a)(2) provides, in part,

23    that "[a] mortgagee, beneficiary, or authorized agent shall contact

24    the borrower in person or by telephone in order to assess the

25    borrower's financial situation and explore options for the borrower

26    to avoid foreclosure."  Plaintiff contends that this code section

27    placed an obligation on WaMu, JPMorgan, Deutsche, and Quality to

28    modify the loan terms rather than foreclose on her property.

1   Compl. ¶¶ 87-90.

2      Defendants first argue that section 2923.5(a)(2) is
3   inapplicable because it came into effect on September 1, 2008, and
4   the Notice of Default in this case was filed several months before
5   that date.  MTD at 11-12.  However, section 2923.5(c) clearly
6   extends a similar obligation where "a mortgagee, trustee,
7   beneficiary, or authorized agent had already filed the notice of
8   default prior to the enactment of this section," by requiring them
9   to file a declaration certifying that "the borrower was contacted
10  to assess the borrower's financial situation and to explore options
11  for the borrower to avoid foreclosure."  Cal. Civ. Code
12  § 2923.5(c).  Based on the allegations in the Complaint, Defendants
13  may not have been in compliance with this statute.

14     Defendants next argue that section 2923.5(a)(2) creates no
15  private right of action.  MTD at 12-13.  Plaintiff effectively
16  concedes this point by arguing that she may still raise this
17  argument to support her claim under California's Unfair Competition
18  Law ("UCL") by using Defendants' violation to establish that their
19  conduct was "unlawful."  Opp'n at 10-11.  Plaintiff presents no
20  argument that the section 2923.5(a)(2) claim can be maintained as
21  an independent claim.  Plaintiff's sixth cause of action is
22  therefore DISMISSED WITH PREJUDICE.

23     Nevertheless, the Court sees no reason why Plaintiff cannot
24  support her UCL claim by alleging that Defendants violated section
25  2923.5(a)(2).  Defendants only response to this proposition is to
26  argue that Plaintiff must seek to certify a class, and meet the
27  requirements of section 382 of the California Code of Civil
28  Procedure, before she can use section 2923.5(a)(2) as a predicate

United States District Court
For the Northern District of California

10

**United States District Court**
For the Northern District of California

for her UCL claim.  Reply at 11.  This argument is wholly without
merit.  Plaintiff is not seeking to represent a class, and she need
only meet the requirements of section 382 if she is seeking to
"pursue representative claims or relief on behalf of others . . .
."  Cal. Bus. & Prof. Code § 17203.  The UCL's standing requirement
for a private party is established by section 17204 of the
California Business and Professions Code, and this section
explicitly authorizes suit "by a person who has suffered injury in
fact and has lost money or property as a result of" unlawful
conduct.  Id. at § 17204.  Plaintiff is clearly alleging she has
lost money or property as a result of unlawful conduct.

    **E.**   **Plaintiff's Seventh Cause of Action for Violation of UCL**

As noted in the previous section, Plaintiff has stated at
least one basis upon which Defendants' conduct might be deemed
"unlawful" under the UCL.  The Court therefore declines to dismiss
Plaintiff's seventh cause of action.

    **F.**   **Plaintiff's Eighth Cause of Action for Unconscionability**

Plaintiff alleges that the promissory note related to the Deed
of Trust was unconscionable because "Plaintiff was made to pay
several unearned and excessive fees, which caused the Plaintiff's
loan to contain an interest rate and monthly mortgage payment
greater than those promised by WaMu."  Compl. ¶ 100.  Plaintiff
also claims that "WAMU operated from a position of superior
bargaining power . . . and took advantage of the Plaintiff . . . ."
Id. at 101.  According to Plaintiff, JPMorgan is liable because it
"masked WAMU's unlawful conduct by continuing to act as if they
were processing Plaintiff's loan modification agreement" and
Deutsche and Quality are liable because they were working towards

11

**United States District Court**
For the Northern District of California

1    "a procedurally flawed nonjudicial foreclosure." Id. ¶ 102.

2         Setting aside the question of whether a Plaintiff may be able

3    to state a cause of action for "unconscionability," which is

4    normally a defense to a contract claim, the Court finds that

5    Plaintiff has failed to plead a basis for contractual

6    unconscionability.  "[U]nconscionability has both a 'procedural'

7    and a 'substantive element,' the former focusing on 'oppression' or

8    'surprise' due to unequal bargaining power, the latter on 'overly

9    harsh' or 'one-sided' results." Armendariz v. Found. Health

10   Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000) (citation

11   omitted).  The Court cannot identify any aspect of procedural

12   unconscionability in Plaintiff's allegations.  Plaintiff complains

13   that the "interest rate and monthly mortgage payments [were]

14   greater than those promised by WaMu," but the Complaint and its

15   exhibits indicate that Plaintiff signed a rider authorizing an

16   adjustable interest rate and monthly payment changes, which

17   notified Plaintiff that she could potentially face a larger debt

18   that what she originally borrowed.  See Compl. Ex. B ("Adjustable

19   Rate Rider") at 1.  Plaintiff has not suggested that any of the

20   changes in her payments exceeded the scope of what she authorized

21   by signing the Adjustable Rate Rider.  This claim therefore lacks

22   any element of "oppression" or "surprise," and is DISMISSED WITHOUT

23   PREJUDICE as to all Defendants.

24        **G.  Plaintiff's Ninth Cause of Action for Unjust Enrichment**

25        Plaintiff alleges that JPMorgan, WaMu, and Deutsche "were able

26   to sell Plaintiff's mortgage to investors at an inflated value,"

27   and Quality "was able to earn fees from a Trustee's Sale that was

28   procedurally flawed," and that Defendants were thereby unjustly

**United States District Court**
For the Northern District of California

1  enriched.  Compl. ¶ 105.  To state a claim for unjust enrichment,

2  Plaintiff must plead the "receipt of a benefit and the unjust

3  retention of the benefit at the expense of another." <u>Lectrodryer</u>

4  <u>v. Seoulbank</u>, 77 Cal. App. 4th 723, 726 (Ct. App. 2000).  The Court

5  does not find Plaintiff's theory of unjust enrichment to be legally

6  plausible.  This cause of action explicitly focuses on the profit

7  that Defendants garnered from the "inflated value" of Plaintiff's

8  mortgage when WaMu sold it to investors, but there is no indication

9  that this "inflated value" was reaped at Plaintiff's expense.

10      In Plaintiff's Opposition, Plaintiff also suggests that this

11  cause of action is based on Defendants' collection of "unearned

12  fees."  These fees are not clearly explained or identified in the

13  Complaint,[4] although they are mentioned several times.  <u>See</u>, <u>e.g.</u>,

14  Compl. ¶¶ 22, 24, 56.  This cause of action is therefore DISMISSED

15  with regard to Defendants JPMorgan and Deutsche.

16          **H.    Plaintiff's Tenth Cause of Action for Accounting**

17      Plaintiff alleges that "[t]he true lenders and owners of the

18  loan are the individual investors of the securitized loan," and

19  that Defendants have no right to receive any of the payments

20  Plaintiff has made on the loan.  Compl. ¶ 107.  The claim is not

21  compelling.  The Complaint does not indicate any legal basis for

22  concluding that entities other than Defendants are entitled to her

23  loan payments.  Her assertion that her loan payments should be made

24  to the purchasers of the security instrument backed by Plaintiff's

25  mortgage is pure speculation.  This Court need not accept the

26  _____

27  [4]  For example, it is not clear whether Plaintiff is referring to
    the fees associated with her monthly payments, with loan
    origination, or with the SFA.  Clarity in this regard is necessary

28  to allow Defendants to prepare their defense.

13

**United States District Court**
For the Northern District of California

1    Complaint's legal conclusions are true.   <u>Iqbal</u>, 129 S.Ct. at 1949-

2    50.

3         In addition, Plaintiff seeks an accounting to determine the

4    amount owed under the loan.   Compl. ¶ 108.   "A cause of action for

5    an accounting requires a showing that a relationship exists between

6    the plaintiff and defendant that requires an accounting, and that

7    some balance is due the plaintiff that can only be ascertained by

8    an accounting."   <u>Hafiz v. Aurora Loan Servs.</u>, No. 09-1963, 2009 WL

9    2029800, at *2 (N.D. Cal. July 14, 2009) (quoting <u>Teselle v.</u>

10   <u>McLoughlin</u>, 173 Cal. App. 4th 156, 179 (Ct. App. 2009)).   Plaintiff

11   does not allege that any balance is due to her.   Instead, she seeks

12   an accounting to determine how much money she owes under the loan.

13   Compl. ¶ 108.   Plaintiff does not cite any authority that supports

14   her right to seek an accounting under these circumstances.

15   Accordingly, Plaintiff's claim for an accounting is DISMISSED WITH

16   PREJUDICE as to all Defendants.

17        **I.    <u>Plaintiff's Eleventh Cause of Action for Quiet Title</u>**

18        The Complaint's quiet title claim is based entirely on

19   Plaintiff's baseless legal assertion that "Defendants' security

20   interest in the SUBJECT PROPERTY has been rendered void and . . .

21   the Defendants are not the holder in due course of the NOTE, and

22   they are not the one entitled to the possession of the NOTE.   Only

23   the individual investors of the securitized loan are entitled to

24   act on the loan."   Compl. ¶ 110.   The Court rejects Plaintiff's

25   conclusions as legally incorrect.   Plaintiff alleges that the

26   foreclosure procedures were initiated by Quality, which had been

27   designated the trustee under the Deed of Trust.   <u>See</u> Substitution

28

**United States District Court**
For the Northern District of California

1  of Trustee at 5-6.  As the trustee, Quality was entitled to

2  initiate foreclosure proceedings.  <u>See</u> Cal. Civ. Code § 2924.

3      Case law addressing this issue is clear:  "Under Civil Code

4  section 2924, no party needs to physically possess the promissory

5  note."  <u>Sicairos v. NDEX West, LLC</u>, No. 08-2014, 2009 U.S. Dist.

6  LEXIS 11223, at *7 (S.D. Cal. Feb. 11, 2009); <u>see also</u> <u>Coyotzi v.</u>

7  <u>Countrywide Fin. Corp.</u>, No. 09-1036, 2009 U.S. Dist. LEXIS 91084,

8  at *53-54 (E.D. Cal. Sept. 15, 2009) (same); <u>Lomboy v. SCME</u>

9  <u>Mortgage Bankers</u>, No. 09-1160, 2009 U.S. Dist. LEXIS 44158, *12-13

10 (N.D. Cal. May 26, 2009) ("Under California law, a trustee need

11 not possess a note in order to initiate foreclosure under a deed

12 of trust.").  Plaintiff's quiet title claim is DISMISSED WITH

13 PREJUDICE as to all parties.

14     **J.**   **Plaintiff's Twelfth and Thirteenth Causes of Action for**

15          **Declaratory and Injunctive Relief**

16     Plaintiff's claims for declaratory and injunctive relief are

17 also based on the same untenable theory that Defendants lost the

18 power to foreclose on Plaintiff's property after they sold the

19 promissory note and the note was securitized.  Compl. ¶¶ 113-19,

20 123.  The claims are therefore DISMISSED WITH PREJUDICE.

21     **K.**   **Plaintiff's Federal Claims**

22     Plaintiff alleges that WaMu violated various federal statutes,

23 including the Real Estate Settlement Procedures Act ("RESPA"), 12

24 U.S.C. §§ 2601 <u>et</u> <u>seq.</u>, the Truth in Lending Act ("TILA"), 15

25 U.S.C. §§ 1601 <u>et</u> <u>seq.</u>, and the Equal Credit Opportunity Act

26 ("ECOA"), <u>id.</u> §§ 1691 <u>et</u> <u>seq.</u>, and that JPMorgan and Deutsche are

27 liable as WaMu's successors in interest.  Compl. ¶¶ 92, 94-96.

28 Defendants respond by pointing out that JPMorgan is not liable for

**United States District Court**
For the Northern District of California

1 these claims, as they are all "borrower claims," as discussed in

2 Part IV(A), <u>supra</u>.

3     An examination of the Complaint bears out JPMorgan's

4 contention.  Plaintiff claims that WaMu breached TILA because it

5 used Plaintiffs' "improper, unverified, and stated income to verify

6 the loan, and their fraudulent acts led to a failure to disclose

7 the proper terms of the loan to Plaintiff."  Compl. ¶ 96.  WaMu

8 allegedly violated ECOA "by intentionally entering Plaintiff into a

9 loan with an interest rate and monthly payment greater than what

10 her and her husband were approved for."  <u>Id.</u> ¶ 95.  WaMu's only

11 alleged RESPA violation was failure "to properly underwrite

12 Plaintiff's loan causing her to enter a mortgage with a higher

13 interest rate and monthly payment than she and her husband were

14 approved for, and resulting in a loan that they could not

15 reasonably afford."  <u>Id.</u> ¶ 94.  All of these alleged violations

16 take place during the loan origination process, rather than during

17 the provision of loan services.

18     Plaintiff's Opposition also indicates that JPMorgan should be

19 liable for communications made to Plaintiff during the loan

20 modification process, during which it was not clear whether

21 Plaintiff was working with WaMu or JPMorgan.  Opp'n at 5-6.

22 However, neither the Opposition nor the Complaint indicates how

23 this behavior implicates any of the federal statutes.  Plaintiff

24 has not alleged any violation of federal law for which JPMorgan may

25 be held liable.

26     Plaintiff also asserts in her Opposition that "Deutsche

27 assumed Defendant WAMU's position under the Promissory Note and the

28 Deed of Trust through the" Assignment of Deed of Trust, and that

**United States District Court**
For the Northern District of California

1    "[a]s an assignee, DEUTSCHE stands in the shoes of the assignor,

2    WAMU." <u>Id.</u> at 5.  Plaintiff may bring an action against an

3    assignee under TILA "only if the violation for which such action or

4    proceeding is brought is apparent on the face of the disclosure

5    statement," 15 U.S.C. § 1641(a), and Plaintiff has not indicated

6    that this was the case.  A claim under ECOA can be brought against

7    a creditor, including "any assignee of an original creditor who

8    participates in the decision to extend, renew, or continue credit."

9    15 U.S.C. § 1691a(e).  Plaintiff has not indicated any such

10    participation on the part of Deutsche.  As for Plaintiff's RESPA

11    claim, the Court cannot discern which provision of RESPA has

12    allegedly been violated.  The claims are therefore DISMISSED as to

13    Deutsche.[5]

14

15    **V.**     <u>**CONCLUSION**</u>

16         For the reasons stated above, Defendants' Motion to Dismiss is

17    GRANTED IN PART and DENIED IN PART:

18         1.    Plaintiff's first cause of action for fraud is DISMISSED

19             WITHOUT PREJUDICE as to JPMorgan; Plaintiff may amend

20             this claim against JPMorgan to focus only on the

21             provision of loan services or JPMorgan's own conduct.

22         2.    Plaintiff's second cause of action for misrepresentation

23             is DISMISSED WITHOUT PREJUDICE as to JPMorgan; Plaintiff

24             may amend this claim against JPMorgan to focus only on

25             the provision of loan services or JPMorgan's own conduct.

26         3.    Plaintiff's third cause of action for breach of contract

27

28    [5]   These claims are the only basis for federal jurisdiction, and the Court will sua sponte remand this case to state court if Plaintiff does not replead them in her amended complaint.

**United States District Court**
For the Northern District of California

1    is undisturbed.

2    4.    Plaintiff's fourth cause of action for promissory
3          estoppel is undisturbed.

4    5.    Plaintiff's fifth cause of action for breach of covenant
5          of good faith and fair dealing is undisturbed.

6    6.    Plaintiff's sixth cause of action for violation of
7          foreclosure procedures is DISMISSED WITH PREJUDICE as to
8          all Defendants, but without prejudice to Plaintiff
9          pursuing this theory as a predicate for her claim under
10         California's Unfair Competition Law.

11   7.    Plaintiff's seventh cause of action for violation of
12         California's Unfair Competition Law is undisturbed.

13   8.    Plaintiff's eighth cause of action for unconscionability
14         is DISMISSED WITHOUT PREJUDICE as to all Defendants.

15   9.    Plaintiff's ninth cause of action for unjust enrichment
16         is DISMISSED WITHOUT PREJUDICE as to Defendants Deutsche
17         and JPMorgan.

18   10.   Plaintiff's tenth cause of action for accounting is
19         DISMISSED WITH PREJUDICE as to all Defendants.

20   11.   Plaintiff's eleventh cause of action for quiet title is
21         DISMISSED WITH PREJUDICE as to all Defendants.

22   12.   Plaintiff's twelfth cause of action for declaratory
23         relief is DISMISSED WITH PREJUDICE as to all defendants.

24   13.   Plaintiff's thirteenth cause of action for injunctive
25         relief is DISMISSED WITH PREJUDICE as to all Defendants.

26   14.   Plaintiff's federal claims are DISMISSED WITH PREJUDICE
27         as to JPMorgan, and DISMISSED WITHOUT PREJUDICE as to
28         Deutsche.

**United States District Court**
For the Northern District of California

1     The Case Management Conference scheduled for June 16, 2010 is

2  CONTINUED to August 13, 2010.  The parties shall appear at 10:00

3  a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden

4  Gate Avenue, San Francisco, CA 94102.  A Joint Case Management

5  Statement must be filed at least seven (7) days prior to the Case

6  Management Conference.

7     Plaintiff Yvonne Zivanic shall submit an amended complaint

8  within thirty (30) days from the date of this Order.  Failure to do

9  so will result in dismissal of her case in its entirety.

11     IT IS SO ORDERED.

13     Dated: June 9, 2010



14                        UNITED STATES DISTRICT JUDGE